UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CONAIR LLC,<br><br>     *Plaintiff,*<br><br>  v.<br><br>UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>     *Defendants.* | Court No. 25-00433 |

## COMPLAINT

Plaintiff, Conair LLC, by and through its attorneys, Sandler, Travis & Rosenberg, P.A., alleges as follows:

1. Plaintiff, Conair LLC (Conair), a U.S.-based importer of record, challenges the assessment of certain tariffs on its imported merchandise.

2. President Donald John Trump invoked the International Emergency Economic Powers Act of 1977, 50 U.S.C. § 1701 *et seq.*, to impose tariffs on most imported merchandise (the "IEEPA tariffs").

3. The IEEPA tariffs are unlawful because IEEPA does not authorize the President to impose tariffs on imported merchandise, and, even if it did, Congress' delegation of such authority through IEEPA would violate the nondelegation doctrine.

4. Both this Court and the Federal Circuit held that the IEEPA tariffs are unlawful. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), *aff'd in part and rev'd in part*, 149 F.4th 1312 (Fed. Cir.), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept.

9, 2025).  The Supreme Court heard oral argument in *V.O.S. Selections* on November 5, 2025, and will likely rule on the matter in the near future.

5.     Defendant United States received the IEEPA duties deposited by Plaintiff and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

6.     Defendant U.S. Customs and Border Protection is the agency that collected the IEEPA duties deposited by Plaintiff and Defendant Rodney S. Scott is the Commissioner of Customs and is sued in his official capacity.

7.     Defendants are referred to collectively as "Defendant" in this complaint.

8.     Defendant, through U.S. Customs and Border Protection ("Customs"), collected the IEEPA tariffs from Plaintiff and, absent injunctive relief, will continue to do so for Plaintiff's merchandise.

9.     This action is necessary, because even if the IEEPA tariffs are held unlawful by the Supreme Court, Plaintiff is not guaranteed a refund for those unlawfully collected tariffs in the absence of its own judgment and judicial relief.

10.    Through this action, Plaintiff seeks a declaration that the imposition and assessment of the tariffs is unlawful, a refund of all the IEEPA tariffs that it has deposited with interest, as provided by law, a permanent injunction preventing Defendant from imposing the IEEPA tariffs on Plaintiff's merchandise, and such further relief as the Court deems appropriate.

## JURISDICTION AND STANDING

11.    The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i).

12.    The Court has all the powers at law and in equity as a United States district court. 28 U.S.C. § 1585.  In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment

against the United States and can order all appropriate relief, including declaratory judgments, reliquidation of entries, and injunctions. 28 U.S.C. § 2643(a)(1), (c)(1).

13. Plaintiff has standing to seek the relief it requests because it is an importer of record that paid IEEPA tariffs to Customs on its entries of imported merchandise and will continue to import merchandise that, absent injunctive relief, would be subject to IEEPA tariffs. A favorable decision striking down the IEEPA tariffs, ordering their refund, and enjoining their future collection will redress Plaintiff's actual and imminent economic injuries.

14. Due process requires that the Defendant refund the IEEPA tariffs that Plaintiff has deposited and that Defendant has unlawfully collected. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36–39 (1990).

15. Defendant has already represented that it would "issue refunds" of the IEEPA tariffs in successfully moving for a stay of this Court's order invalidating those tariffs. *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, ECF No. 6 at 25 (Fed. Cir. May 29, 2025); *see V.O.S. Selections, Inc. v. Trump*, 2025 WL 1649290, at *1 (Fed. Cir. June 10, 2025) (en banc) (per curiam) (granting a stay pending appeal).

16. Defendant has also represented that it "would not oppose the Court's authority to order reliquidation of entries of merchandise subject to the" IEEPA tariffs to avoid an injunction of liquidation. *Princess Awesome, LLC v. U.S. Customs & Border Prot.*, Court No. 25-00078, Joint Stipulation ¶ 2, ECF No. 17 (Ct. Int'l Trade May 28, 2025).

17. Defendant has also represented that it does "not oppose the reliquidation of any entries of goods subject to IEEPA duties paid by plaintiffs that are ultimately found to be unlawful after appeal," adding that plaintiffs were "guaranteed payment … should the Court's decision be upheld," in successfully moving for a stay of a district court's order invalidating the IEEPA tariffs.

*Learning Res., Inc. v. Trump*, No. 25-cv-01248-RC, ECF No. 41 at 13 (D.D.C. June 2, 2025); *see id.*, ECF No. 42 (June 3, 2025) (granting stay pending appeal).

18. Because of these representations in court filings made to obtain and avoid judicial intervention, Defendant is judicially estopped from contesting this Court's authority to order IEEPA-tariff refunds. *See Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

## TIMELINESS

19. Actions brought in this Court under 28 U.S.C. § 1581(i) must be commenced "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

20. This action was timely commenced within two years of the executive orders implementing the IEEPA tariffs.

## BACKGROUND

21. Beginning in February 2025, the President, relying on IEEPA, issued several executive orders imposing tariffs on imported merchandise.

22. The first series of executive orders (the "Trafficking Tariff Orders") imposed tariffs under IEEPA on imported merchandise of Canada, Mexico, and the People's Republic of China, or modified those tariffs. Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 1, 2025); *see, e.g.*, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Executive Order 14228, *Further Amendment*

*to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 3, 2025).

23. The second series of executive orders (the "Reciprocal Tariff Orders") imposed tariffs under IEEPA on most imported merchandise, or modified those tariffs, to address trade deficits with the United States' trading partners, among other issues. Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025); *see, e.g.*, Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Executive Order 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

24. The third series of executive orders (the "Country-Specific Tariff Orders") imposed tariffs under IEEPA on imported merchandise of Brazil and India, or modified those tariffs. *See, e.g.*, Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (July 30, 2025); Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 6, 2025); Executive Order 14361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed, Reg. 54,467 (Nov. 20, 2025).

25. The executive orders also modified, or directed federal agencies to modify, the Harmonized Tariff Schedule of the United States (HTSUS) to include the IEEPA tariffs in various chapter 99 headings.

26. Plaintiff classified its imported merchandise under chapter 99 headings imposing IEEPA tariffs, as required under the HTSUS.

27. Importers of record, like Plaintiff, must deposit estimated IEEPA tariffs, like all other duties, at the time of entry. 19 U.S.C. § 1505(a).

28. Plaintiff has paid all estimated duties, taxes, and fees, including IEEPA tariffs, owed on its entries of imported merchandise.

## COUNT I

## IEEPA Does Not Authorize the President to Impose Tariffs

29. Plaintiff incorporates paragraphs 1 through 28 by reference.

30. The imposition of tariffs under IEEPA by executive order, including the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders, as well as the implementation of such tariffs through the modification of the HTSUS and the collection of such tariffs by Customs, is unlawful because IEEPA does not provide the President the authority to impose tariffs on imported merchandise.

31. IEEPA delegates to the President the authority to "regulate … importation" of property in which "any foreign country" or foreign national has an "interest," to "deal with an unusual and extraordinary threat with respect to which a national emergency has been declared …." 50 U.S.C. §§ 1701(b), 1702(a)(1)(B).

32. The power to "regulate … importation" does not include the power to impose tariffs.

33. "The power to 'regulate' has long been understood to be distinct from the power to 'tax.'" *V.O.S. Selections*, 149 F.4th at 1332–33.

34. To "regulate" is "to direct by rule or restriction." *Black's Law Dictionary* 1556 (5th ed. 1979).

35. Tariffs are not "rules" or "restrictions" on importation, such as licensing or certification requirements, *V.O.S. Selections*, 149 F.4th at 1334 n.15, but rather taxes on imports.

36. To "regulate" also does not include the power to impose tariffs because it appears alongside other verbs—including "investigate, block during the pendency of an investigation," "direct and compel, nullify, void," and "prevent or prohibit," 50 U.S.C. § 1702(a)(1)(B)—none of which connote revenue-raising impositions. *V.O.S. Selections*, 149 F.4th at 1333–34.

37. Additionally, the phrase "regulate … importation" cannot include the power to impose tariffs because taxes, including tariffs, "cannot be imposed without clear and express words for that purpose." *United States v. Isham*, 84 U.S. (17 Wall.) 496, 504 (1873); *Eidman v. Martinez*, 184 U.S. 578, 583 (1902).

38. The verb "regulate" does not clearly and expressly provide the authority to impose tariffs or taxes.

39. Furthermore, whether and at what rate to impose tariffs on imported merchandise are decisions "of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022).

40. Under the major-questions doctrine, Congress could not have delegated to the President the authority to impose tariffs of national economic importance through the brief phrase "regulate … importation." *See Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023); *Ala. Assoc. of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764–65 (2021).

41. The major-questions doctrine therefore confirms that Congress did not provide the President the power to impose tariffs through IEEPA's phrase "regulate … importation." *See V.O.S. Selections*, 149 F.4th at 1334–36.

42. Because IEEPA does not provide the President the authority to impose tariffs, the Trafficking Tariff Orders, Reciprocal Tariff Orders, Country-Specific Tariff Orders, HTSUS modifications implementing those executive orders, and Customs' collection of IEEPA tariffs, are *ultra vires*.

## COUNT II

**IEEPA Does Not Constitutionally Delegate to the President the Power to Impose Tariffs**

43. Plaintiff incorporates paragraphs 1 through 42 by reference.

44. The imposition of tariffs under IEEPA by executive order, including the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders, as well as the implementation of such tariffs through the modification of the HTSUS and the collection of such tariffs by Customs, is also unlawful because IEEPA does not constitutionally delegate to the President the power to impose tariffs.

45. The Constitution provides only Congress, and not the President, the "power to lay and collect taxes, duties, imposts and excises[.]" U.S. Const. art. I, § 8, cl. 1.

46. Congress cannot delegate its power to the President without providing an "intelligible principle" to guide the exercise of that power. *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928).

47. Specifically, to delegate its power to the President without violating the separation of powers, Congress must at a minimum make "clear" both the "general policy" that the President must pursue and the "boundaries" that the President may not cross, as well as provide "sufficient standards to enable both the courts and the public to ascertain whether" the President "has followed the law." *FCC v. Consumers' Res.*, 606 U.S. 656, 673 (2025) (quotation and alteration omitted).

48. The "guidance" that Congress must provide when delegating its power to the President is "greater" when the exercise of that power will "affect the entire national economy than when it addresses a narrow, technical issue." *Consumers' Res.*, 606 U.S. at 673 (quotation omitted).

49. Even if the phrase "regulate … importation" delegated to the President the power to impose tariffs (and it does not), IEEPA fails to supply an intelligible principle guiding the exercise of that power.

50. In this case, IEEPA must provide even greater guidance than might otherwise be sufficient under the nondelegation doctrine because the IEEPA tariffs are not a narrow, technical issue but rather affect, and are intended to affect, the entire national economy. *See, e.g.*, Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025).

51. IEEPA fails to clearly set forth the general policy and boundaries that the President must follow in imposing tariffs.

52. For example, IEEPA does not set forth any quantitative or qualitative limits on tariffs, such as rate caps, unrenewable time limits, or prerequisite investigations and findings that could guide the President in imposing tariffs. *Cf., e.g.*, 19 U.S.C. §§ 1338, 1862, 2132(a), 2251, and 2411.

53. If the phrase "regulate … importation" provided the President the authority to impose tariffs, IEEPA would unconstitutionally give the President "virtually unfettered" authority over the national economy. *A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 542 (1935).

54. Because IEEPA would violate the nondelegation doctrine if it provided the President the authority to impose tariffs, the Trafficking Tariff Orders, Reciprocal Tariff Orders, Country-Specific Tariff Orders, HTSUS modifications implementing those executive orders, and Customs' collection of IEEPA tariffs, are unconstitutional.

## COUNT III

### Declaratory Judgment

55. Plaintiff incorporates paragraphs 1 through 54 by reference.

56. This Court has the authority "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

57. This action presents an actual controversy regarding the President's authority to impose tariffs under IEEPA, the constitutionality of IEEPA as applied to the President's executive orders imposing IEEPA tariffs, and the authority of Defendant to implement and collect the IEEPA tariffs through the HTSUS.

58. Plaintiff has suffered injury in fact because it is an importer of record that paid estimated IEEPA tariffs on merchandise that it imported and will continue to pay such IEEPA tariffs on imported merchandise absent judicial relief.

59. The Court should exercise its equitable authority to issue a declaratory judgment that the imposition of tariffs under IEEPA by executive order, including the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders, is unlawful—because this Court's decision in *V.O.S. Selections*, as affirmed by the Federal Circuit, so holds; because the IEEPA Tariff Orders are *ultra vires*; or because IEEPA unconstitutionally delegates legislative power to the President—and that Customs consequently lacks the authority to implement and collect the IEEPA tariffs.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

(a) Declare that the President lacks the authority to impose tariffs under IEEPA or, alternatively, declare that IEEPA unconstitutionally delegates to the President the authority to impose tariffs;

(b) Declare that Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders are unlawful;

(c) Order Defendant to reliquidate Plaintiff's entries of imported merchandise subject to IEEPA tariffs and refund to Plaintiff all IEEPA tariffs that it paid, with all interest as provided by law;

(d) Permanently enjoin Defendant from assessing IEEPA tariffs on Plaintiff's entries of imported merchandise;

(e) Award Plaintiff its costs and attorneys' fees; and

(f) Grant Plaintiff such further relief as this Court deems appropriate.

Dated: December 9, 2025               Respectfully submitted,

                                      /s/ Jason M. Kenner
                                      Jason M. Kenner
                                      **SANDLER, TRAVIS & ROSENBERG, P.A.**
                                      286 Madison Avenue, Suite 1200
                                      New York, New York 10017
                                      (212) 549-0137
                                      jkenner@strtrade.com